IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TAMMY HILLIARD, )
    Plaintiff, )
)
v. ) 2: 12-CV-1856
)
COMMISSIONER OF SOCIAL SECURITY, )
    Defendant. )

REPORT AND RECOMMENDATION

I. Recommendation

It is respectfully recommended that the plaintiff's motion for summary judgment (ECF No. 12) be granted, that the defendant's motion for summary judgment (ECF. No. 15) be denied, that the decision of the Commissioner be reversed, and that benefits be awarded.

II. Report

Presently before the Court for disposition are cross motions for summary judgment.

On December 21, 2012, Tammy Hilliard, by her counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g) for review of the Commissioner's final determination disallowing her claim for Supplemental Security Income benefits under Sections 1614 and 1631 of the Act, as amended, 42 U.S.C. §1381 cf.

The instant application for Supplemental Security Income Benefits was filed on March 7, 2011 (R.167-175). On July 12, 2011, benefits were denied (R. 82-94, 98-102), and on September 13, 2011, the plaintiff requested a hearing (R.103). Pursuant to that request a hearing was held on March 14, 2012 (R.46-81). In a decision filed on May 10, 2012, an Administrative

Law Judge denied benefits (R.17-33), and on July 10, 2012, the plaintiff requested reconsideration of that determination (R.15). On October 23, 2012, the Appeals Council affirmed the prior determination (R.1-3). The instant complaint was filed on December 21, 2012.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his/her burden of demonstrating that he/she was disabled within the meaning of the Social Security Act. Richardson v. Perales, 402 U.S. 389 (1971); Adorno v. Shalala, 40 F.3d 43 (3d Cir. 1994).

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Johnson v. Comm'r, 529 F.3d 198 (3d Cir. 2008) and the court may not set aside a decision supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358 (3d Cir. 1999)

The purpose of the Supplemental Security Income Program is to provide additional income to persons of limited resources who are aged, blind or disabled persons. 42 U.S.C. §1381; Chalmers v. Shalala, 23 F. 3d 752 (3d Cir. 1994). To be eligible for such benefits, an individual's income must not exceed a certain established maximum and he/she must fulfill certain eligibility requirements.

As set forth in 20 C.F.R. § 416.905(a) disability is defined as:

> the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

In addition, a person will be considered disabled if he/she is

> (a) ... permanently and totally disabled as defined under a State plan approved under title XIV or XVI of the Social Security Act, as in effect for October 1972; (b) ... received aid under the State plan ... for the month of December 1973 and for at least one month prior to July 1973; and (c) ... continue[s] to be disabled as defined under the State plan.

20 C.F.R. § 416.907.

A physical or mental impairment is defined in 20 C.F.R. §416.908 as an:

> impairment [which] result[s] from anatomical, physiological, or psychological abnormalities which [are demonstrated] by medically acceptable clinical and laboratory diagnostic techniques.

For purposes of determining whether or not the plaintiff met the eligibility requirements, certain evidence was considered by the Commissioner.

At the hearing held on March 14, 2012 (R.46-81), the plaintiff appeared with counsel (R.48) and testified that she was born on February 7, 1968 and completed high school (R.54). She also testified that she is receiving psychological counseling (R.55) that she has difficulty standing for any time and has to alternate between sitting and standing or repositioning herself every fifteen minutes (R.56-57,71); that she experiences memory difficulties (R.57); that she has difficulty being around other people and experiences depression daily (R.57-58); that she is able to sleep (R.58); that she takes medication for depression, anxiety, pain and ADHD (R.60,63,67); that she had a heroin problem in the past and was successfully treated with

methadone (R.60-61) and that if she was working she would miss two to three days a week due to depression or anxiety (R.73).

At the hearing a vocational expert was called upon to testify (R.74-78). She classified the plaintiff's past work experience as light exertional (R.74). However, the witness also testified that if an individual of the plaintiff's age, education and work experience could only lift ten pounds occasionally or three pounds frequently and had to sit for forty-five minutes and stand for fifteen minutes throughout the day, such a person could not perform the plaintiff's limited former employ as a home attendant (R.74-75). She also testified that there are a number of sedentary jobs such a person could perform (R.76) but that the individual could not perform these jobs if she could not work under any pressure or had difficulty interacting with others (R.76-78). The witness also testified that if the individual had to miss two days of work a week, she could not be employed (R.77).

In addition, certain other evidence was considered.

The Pennsylvania Department of Public Welfare issued several decision finding the plaintiff temporarily disabled. On October 21, 2008, Dr. John Soffietti found the plaintiff to be temporarily disabled from April 21, 2008 to October 21, 2008 (R.512). In addition, the plaintiff was also found temporarily disabled for the periods of: November 11, 2009 to May 11, 2010 by Dr. William DeWolf (R.508); from May 17, 2010 to July 11, 2010 by Dr. Edward Balestrino (R.505); from June 25, 2010 to June 24, 2011 by Dr. Rajendra Nigam (R.502); and from April 2011 to April 2012 by Dr. Geith Shahoud (R.635).

The plaintiff was treated at the Irene Stacy Community Mental Health Center between April 21, 2004 and February 6, 2009 for a major depressive disorder. She was non-compliant with her medication program and her treatment was terminated for failure to keep

appointments (R.312-323).

In a report of psychological treatment conducted between May 28, 2010 and July 30, 2010 it is observed that the plaintiff was discharged on August 31, 2010 for failure to keep appointments (R.214-248).

The plaintiff was treated twice at Family Psychological Associates during the period from May 28, 2010 through July 30, 2010. The prognosis was fair. (R.519-520).

The plaintiff was hospitalized at Butler Memorial Hospital from July 15, 2010 through July 22, 2010 and from November 12, 2010 through November 18, 2010 for a major depressive disorder and substance abuse. At discharge she was considered medically stable (R.249-272).

The plaintiff was treated by Dr. Edward Balestrino between February 4, 2010 and December 3, 2010 for knee pain, anxiety and depression. Medication and counseling were recommended (R.324-341).

The plaintiff was treated at the Butler Health System between September 17, 2010 and February 14, 2011. A diagnosis of bipolar disorder and heroin dependence which was sustained on methadone was made (R.521-535).

The plaintiff was housed at the Butler County Prison from January 18, 2011 through February 17, 2011 where her medications were continued (R.273-291).

In a letter dated March 1, 2012 and covering treatment since March 9, 2011, it was noted that the plaintiff was receiving methadone (R.516).

In a report of a psychological evaluation conducted on April 18, 2011 a bipolar and anxiety disorder was diagnosed as well as opiate abuse and back pain (R.292-294).

The plaintiff was treated at Tri Rivers Surgical Associates between August 19, 2009 and June 7, 2011 for a fibula fracture, talus fracture, thoracic post-laminectomy syndrome and lumbar radiculitis (R.536-547).

The plaintiff was treated by Julie Uran, Ph.D. and Karen Rodgers, M.A. for a bipolar disorder, opioid abuse, panic disorder and anxiety disorder during the period from March 28, 2011 through October 18, 2011. The treatment was focused on coping skills, mood stabilization, solving skills to reduce anxiety and improving interpersonal relationships (R.342). In Dr. Uran's psychological evaluation conducted on June 8, 2011 a diagnosis of bipolar disorder, anxiety and history of substance abuse was made. The prognosis was poor. Moderate to marked work limitations were noted (R.295-305).

In a medical report of an evaluation on June 28, 2011, Dr. Mohamad Abul-Ela noted chronic low back pain, depression and a history of bipolar and anxiety disorder (R.306-311).

Records from Butler Memorial Hospital for the period from August 15, 2009 through August 31, 2011 reflect treatment for a left fibula fracture, opiate dependence, depression, suicidal ideation, anxiety and ankle sprain. Treatment included psychiatric hospitalizations (R.343-500).

In a report from Discovery House dated January 17, 2012, it is noted that the plaintiff remained preoccupied with [drug] use and was unable to adequately address relationships or work tasks (R.518).

The plaintiff was treated by James Bumbaugh, D.O. between April 14, 2011 and February 20, 2012 for anxiety, hypertension, obesity with abnormal weight gain, hyperlipidemia and hypothyroidism (R.548-614).

The plaintiff was treated at Western Pa. Behavioral Health between April 5, 2011 and February 28, 2012 for a bipolar disorder and depression (R.615-670).

Based on the evidence presented, the Commissioner determined:

> The claimant has not engaged in substantial gainful activity since March 1, 2011, the alleged onset date.
>
> The claimant has the following severe impairments: back disorder, obesity, bipolar II disorder, anxiety disorder NOS, attention deficit hyperactivity disorder NOS, and polysubstance abuse...
>
> The medical record contains other conditions; however ... these other conditions fail to produce more than a minimal effect on the claimant's ability to perform basic work activities and are deemed non-sever. An impairment is not severe if it does not significantly limit the physical or mental ability to do basic work activities...
>
> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.09. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "Paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.
>
> In activities of daily living, the claimant has mild limitations ...
>
> In social functioning, the claimant has moderate limitations...
>
> With regard to concentration, persistence or pace, the claimant has moderate limitations...

As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration...

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied...

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work ... except that the claimant would require[] a pattern of sitting for 45 minutes and then standing for 15 minutes throughout a workday. The claimant would be limited to performing only simple routine repetitive tasks that are not fast paced, and could make only simple decisions. She is able to collaborate with the public and co-workers only incidentally, but she could only collaborate with her supervisors for approximately one sixth of the workday...

The claimant is [a] 43 year old wom[a]n with a high school education. She currently resides with her 89-year-old mother. At the hearing, the claimant testified that she continues to have some back pain since [an] automobile accident several years ago and she was unable to stand for long periods of time. She further reported that she needed to change positions every 15 minutes. In addition to her physical impairments, the claimant testified that she has depression and anxiety and that her attention span and memory was very poor...

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

In terms of the objective evidence, the claimant's medical history is inconsistent with and unsupportive of the claimant's allegations of disability. Her medical record establishes that her physical impairments to do prevent her from engaging in work within the above residual functional capacity...

In February 2010, Dr. Balestrino, her primary care physician,

noted ... the claimant reported that she had no residual problems from her injuries and that she was 99 percent "pain free." She explained she used only over the counter medications for her occasional back pain...

The undersigned concludes that the claimant's obesity contributes to her functional limitations but does not result in limitations in excess of the residual functional capacity stated herein...

In regards to her mental impairments, the objective medical record is unsupportive of the claimant's allegations of disabling mental impairments and is consistent with the above residual functional capacity. The medical records reveal the claimant has a history of treatment for depression, anxiety, and opioid dependence since at least 2003...

[R]ecent records document the claimant has received psychiatric treatment for depression, anxiety, and opioid dependency... Treating records indicated that the claimant was prescribed several psychotropic medications ... and that in June 2010 she reported she was doing well. More specifically, treating notes indicated that her mood was stable, affect was congruent, and her thought processes were logical, and that there was no suicidal or homicidal ideation...

In June 2011, the claimant presented to Julie Uran, Ph.D., a State agency consultative examiner, for a psychological evaluation…. Notably, the claimant denied any illegal drug use after January 2009. Dr. Uran diagnosed the claimant with bipolar II disorder, anxiety disorder NOS, attention deficit hyperactivity disorder, and cocaine and opioid abuse in remission. She reported that the claimant's prognosis was poor in terms of higher-level functioning and personality integration and that the claimant's GAF score was 50. Notably, the claimant reported to Dr. Uran that she had not abused any opiates after September 2009. However, the records reflect that she admitted buying drugs off the street less [than] seven months before.

In addition, subsequent evidence revealed the claimant was not truthful in reporting her drug usage history to her doctors in order to obtain narcotic medications...

The claimant never reported to Dr. Shahoud her history of opioid abuse, benzodiazepine abuse and dependence and thus was able

to obtain Xanax (a benzodiazepine which is a controlled substance that is highly addictive), Adderall, and other medications on false pretenses in November 2011 and in February 2012. The claimant was also able to obtain Xanax from Dr. Bumbaugh in February 2012. The claimant also never reported to Dr. Craig, her orthopedic physician, in June 2011 that she had a history of drug abuse and was enrolled in a methadone treatment program. Records from Discovery House indicated the claimant began a methadone maintenance program with individual and group counseling from March 2011 through March 2012. This evidence shows a very clear pattern of deliberate manipulation of the medical system to obtain drugs and thus undermines the claimant's credibility….

Considering the subjective factors in this case ... the preponderance of the evidence fails to substantiate the severity of claimant's allegation of disability. Claimant has a history of manipulating the system to obtain drugs under false pretenses that negatively impacts her credibility. Additionally, the record reflects some issues with claimant's compliance with recommended treatment. The claimant's treatment has by and large been routine and conservative. The objective findings in this case are not consistent with disability. The limitations resulting from claimant's impairments would not preclude her from engaging in work activity within the parameters of the carefully calculated residual functional capacity assessment set forth ...

The claimant's credibility is further undermined by her poor work history. A review of the claimant's work history shows that the claimant worked only sporadically prior to the alleged disability onset date... The claimant's poor work history raises a question as to whether the claimant's continuing unemployment is actually due to her medical impairments.

In regard to opinion evidence, Dr. Brentzel, a State agency psychological consultant, prepared a mental residual functional capacity assessment in June 2011 in which she opined that the claimant was not significantly limited in 9 of the 20 subcategories of understanding and memory, sustained memory and persistence, adaptation, and social interaction. In the remaining 11 subcategories, Dr. Brentzel opined that the claimant had only moderate limitations. Additionally, Dr. Brentzel opined the claimant was able to make simple decisions and carry out very short and simple instructions and would be

able to maintain concentration and attention for extended periods of time. The undersigned accords great weight to Dr. Brentzel's opinion because it is consistent with the objective clinical findings and the other substantial evidence of record.

In June 2011, Dr. Uran, a State agency consultative examiner, opined the claimant had no limitations in understanding, remembering, and carrying out short, simple instructions and moderate limitations in making judgments on simple work related decisions. She further opined the claimant had no limitations in interacting appropriately with supervisors, but moderate to marked limitations in interacting with the public and co-workers. Dr. Uran noted the claimant had moderate limitations in responding appropriately to changes in work settings and marked limitations in responding appropriately to work pressures in a usual work setting. The undersigned accords some weight to this opinion, only to the extent that it is consistent with the residual functional capacity stated above, because she examined the claimant only once and her opinions were based, in part, upon the claimant's self reports. The claimant misled Dr. Uran regarding her substance abuse. The degree of severity of her mental impairments has been cast in doubt by the claimant's misrepresentations regarding her drug history and her drug seeking behavior.

In May 2010, Dr. Balestrino completed a state agency employability assessment in which he opined the claimant was temporally disabled from May 2010 to July 2010 due to her anxiety and panic disorder. Dr. [Nigam] also completed a State agency employability assessment in which he opined the claimant was temporally disabled from June 2010 to July 2011 due to her bipolar II disorder. The undersigned accords little weight to these opinions because they are conclusory and were not well supported by objective clinical findings and laboratory diagnostic techniques. These reports are based in part upon the claimant's subjective complaints and claimant is not a credible reporter of her symptoms. Finally, even if taken at face value, such reports of temporary disability do not indicate the required duration of 12 months. In addition, the determination of disability is an issue reserved for the Commissioner. …

In sum, the claimant's contentions are not credible to show an inability to perform a wide range of unskilled sedentary work. The claimant's allegations of total disability are not supported by and are inconsistent with the medical evidence of record.

> Significantly, the claimant is fundamentally not credible...
> Accordingly, based upon the substantial weight of the objective evidence, the claimant's course of treatment, her level of daily activity, her work history, and the medical opinions, which have been given the appropriate weight ... the undersigned finds that the claimant is able to perform work activities consistent with the residual functional capacity stated above...
>
> Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform...
>
> The claimant has not been under a disability, as defined in the Social Security Act since March 1, 2011, the date the application was filed (R.22-33).

In this case, the Commissioner has made several serious errors which are directly linked to the conclusion that the plaintiff does not meet the requirements for demonstrating disability. First, the Commissioner failed to acknowledge all of the findings of disability by the Pennsylvania Department of Public Welfare. On October 21, 2008, Dr. John Soffietti found the plaintiff to be temporarily disabled from April 21, 2008 to October 21, 2008 (R.512). In addition, the plaintiff was also found temporarily disabled for the periods of: November 11, 2009 to May 11, 2010 by Dr. William DeWolf (R.508); from May 17, 2010 to July 11, 2010 by Dr. Ed Balestrino (R.505); from June 25, 2010 to June 24, 2011 by Dr. Rajendra Nigam (R.502); and from April 2011 to April 2012 by Dr. Geith Shahoud (R.635). The Commissioner did not acknowledge the findings by Drs. Soffietti, DeWolf or Shahoud at all, and discounted those of Drs. Balestrino and Nigam on the grounds that "they are conclusory and were not well supported by objective clinical findings and laboratory diagnostic techniques. These reports are based in part upon the claimant's subjective complaints and claimant is not a credible reporter of her symptoms. Finally, even if taken at face value, such reports of temporary disability do not

indicate the required duration of 12 months." (R.30-31.)

However, these statements are also problematic. They fail to recognize that Drs. Soffietti, DeWolf, Balestrino, Nigam and Shahoud were the plaintiff's treating physicians. Under the treating physician doctrine, "a court considering a claim for disability benefits must give greater weight to the findings of a treating physician than to the findings of a physician who has examined the claimant only once or not at all." Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993). In addition, all of the reports were based on physical examinations and some also considered medical records, clinical history and appropriate tests and diagnostic procedures. The Commissioner also erred in that Dr. Nigam's assessment of her temporary period of disability (June 2010 to July 2011) does exceed 12 months and the periods of disability unquestionably add up to more than 12 months when considered together.

The Commissioner, "as the finder of fact can reject, partially or fully, subjective complaints if he finds them not credible based upon other evidence in the record." Niewierski v. Astrue, 737 F. Supp. 2d 459, 470 (W.D. Pa. 2010). However, in this case, the "other evidence in the record" appears to be the Commissioner's conclusion that the plaintiff did not always admit her history of drug abuse to her physicians, and on at least one occasion, the fact that she stated in June 2011 that she had not abused any opiates after September 2009 (R.296) when she had indicated upon her admission to Butler Memorial Hospital in November 2010 that she had bought benzodiazepines off the street (R.249). The Commissioner has not explained why this minor discrepancy in her memory is "notable" (R.29).

Similarly, the Commissioner commented that "the claimant was able to obtain Xanax from Dr. Bumbaugh in February 2012." (R.29.) This statement implies that she obtained Xanax by lying to Dr. Bumbaugh, that is, by not telling him about her history of substance abuse.

However, on the same page of the record in which he prescribed Xanax, Dr. Bumbaugh noted that the plaintiff was in a methadone program (R.551), which means he knew about her drug dependency and prescribed Xanax anyway. Thus, the Commissioner's conclusion that the plaintiff lied to Dr. Bumbaugh is in error. The plaintiff also testified at the hearing that Dr. Balestrino and Dr. Shahoud both prescribed benzodiazepines even though they were aware that she was in a methadone program (R.62-63). The Commissioner's statement that the plaintiff obtained Xanax from Dr. Shahoud "under false pretenses" because she did not tell him about her history of substance abuse is an improper mischaracterization of the evidence. It is undisputed that the plaintiff has bipolar disorder and anxiety disorder and that Xanax can be used to treat these conditions. Although it is true that Dr. DeWolf concluded she should not be on Xanax and Adderall because of her history and because she was on methadone maintenance (R.496), it is possible that other doctors disagreed. Moreover, even if the evidence demonstrated that the plaintiff deliberately failed to tell Dr. Shahoud about her history of substance abuse because she wanted to obtain Xanax and that Dr. Shahoud would not have prescribed Xanax if he had this information, the Commissioner would still have erred in relying on it.

There is no basis in the record provided for concluding that the plaintiff is not a credible reporter <u>of her symptoms</u>, which is the issue to be decided in this case. The conclusion is not based on any statement made by a medical provider (i.e., that she was exaggerating her symptoms) or any statement made or behavior exhibited by the plaintiff at the hearing. The Commissioner appears to have applied "the discredited doctrine of *falsus in uno, falsus in omnibus* (false in one thing, false in all things), which Wigmore called 'primitive psychology,' John H. Wigmore, <u>A Students' Textbook of the Law of Evidence</u> 181 (1935), and … an 'absolutely false maxim of life.' 3A Wigmore, <u>Evidence in Trials at Common Law</u>, § 1008, p.

982 (James H. Chadbourn ed., rev. ed.1970)." Kadia v. Gonzales, 501 F.3d 817, 821 (7th Cir. 2007). This Court is unaware of any example of the doctrine being employed in a Social Security benefits case. In this case, the Commissioner rejected any statement made by a medical provider that might have supported the plaintiff's claim of disability on the ground that she "was not a credible reporter of her symptoms," but there is no basis in the record for this statement.

Second, the Commissioner erred in concluding that Dr. Julie Uran was a state agency consultative examiner who saw the plaintiff only once and in stating that the plaintiff misled Dr. Uran about her history of substance abuse (R.30). The first error appears to have been based on a statement made by Dr. Phyllis Brentzel, a state agency psychological consultant who never met, examined or treated the plaintiff, that Dr. Uran had only a "brief clinical encounter" with the plaintiff (R.91). In fact, Dr. Uran was involved in plaintiff's treatment from March 28, 2011 to October 18, 2011 (R.295-305) and was a treating psychologist. The statement about misleading Dr. Uran is also in error. In fact, Dr. Uran reported plaintiff's history of abusing opiates, including pain pills, marijuana and cocaine, and diagnosed cocaine abuse in remission and opioid abuse in remission (R.296, 298) and was thus well aware of her history. Dr. Uran concluded that the plaintiff had "marked" impairment in the ability to withstand work pressures and "marked" impairment in the ability to interact with others (R.302). These conclusions, which are entitled to "greater weight" than those of Dr. Brentzel and should not have been dismissed on the erroneous ground that the plaintiff misled Dr. Uran about her history of substance abuse, would satisfy the criteria for disability.

Finally, the Commissioner's finding is based in part on a response to a question asked of the vocational expert about an individual with a marked impairment in the ability to withstand work pressures, or the marked impairment in the ability to interact with others, to which the

vocational expert responded that no jobs would be available in either situation (R.76-78). As noted above, Dr. Uran, the plaintiff's treating psychologist, expressly found both of these limitations in her report (R.302). Again, since the Commissioner erred in concluding that Dr. Uran was a state agency consultative examiner rather than a treating psychologist, erred in preferring the opinion of Dr. Brentzel (who was a consultative examiner) and erred in concluding that the plaintiff misled Dr. Uran about her history of substance abuse, the decision to reject the application of the hypothetical to the plaintiff is unsupported in the record.

Summary judgment is appropriate where there are no material factual issues in dispute and the movant is entitled to judgment as a matter of law. Lichtenstein v. UPMC, 691 F.3d 294 (3d Cir. 2012). In the instant case there no material issues of fact in dispute, and the findings of the Commissioner are not supported by substantial evidence. For this reason, it is recommended that the plaintiff's motion for summary judgment be granted, that the defendant's motion for summary judgment be denied, that the decision of the Commissioner be reversed, and that benefits be awarded.

Within fourteen days after being served with a copy, any party may serve and file written objections to the report and recommendation. Any party opposing the objections shall have fourteen days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

Filed: September 3, 2013

s/ Robert C. Mitchell
United States Magistrate Judge